IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| EVA D. THOMPKINS, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 1:12-00146 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-1383f. This case is presently pending before the Court on the Plaintiff's Motion for Summary Judgment (Document No. 11.) and Defendant's Motion for Judgment on the Pleadings. (Document No. 14.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 7 and 8.)

The Plaintiff, Eva D. Thompkins (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on May 6, 2008 (protective filing date), alleging disability as of October 31, 2007, due to "COPD and emphysema, with blebs and scarring in both lungs."[1] (Tr. at 14, 68-74, 75, 77, 84.)

---

[1] On her form Disability Report - Adult, Claimant stated that her conditions limited her ability to work as follows:

> I can't lift my grandchildren, who are 20 and 32lbs each. I cannot do anything strenuous. I get out of breath walking even short distances. I get dizzy and am off balance when I straighten after bending. I can't lift over about 8 lbs. I get sharp chest pains at times, especially if I have lifted something too heavy. I have trouble concentrating and remembering and cannot seem to finish things I start. I stay tired, but

The claims were denied initially and upon reconsideration. (Tr. at 43-45, 47-49, 232-34, 238-40.) On December 2, 2008, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 39.) The hearing was held on November 13, 2009, before the Honorable Geraldine H. Page. (Tr. at 243-69.) By decision dated December 30, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-27.) The ALJ's decision became the final decision of the Commissioner on November 29, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 5-9.) On January 23, 2012, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third

---

have trouble sleeping.

(Tr. at 77.)

inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. <u>Id.</u> §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. <u>Id.</u> If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a <u>prima facie</u> case of disability. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your

> overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, October 31, 2007. (Tr. at 16, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "emphysema, chronic obstructive pulmonary disease (COPD), and fibrosis with history of spontaneous pneumothorax," which were severe impairments. (Tr. at 17, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity

---

extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

of any listing in Appendix 1. (Tr. at 21, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for light exertional level work as follows:

> [T]he [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can only occasionally use ramps and climb stairs; she can frequently balance, kneel, crawl, stoop and crouch; she needs to be able to alternate between sitting and standing; she should avoid exposure to extreme temperatures, excess humidity, wetness, pollutants, and respiratory irritants; and she should avoid working around hazardous machinery or at unprotected heights, climbing ladders/ropes/scaffolds, or being on vibrating surfaces.

(Tr. at 22, Finding No. 5.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 25, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform work as a cashier, an assembler, and an inspector/tester/sorter, at the light and unskilled level of exertion. (Tr. at 25-26, Finding No. 10.) On this basis, benefits were denied. (Tr. at 26, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch,

495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on June 30, 1967, and was 42 years old at the time of the administrative hearing, November 13, 2009. (Tr. at 25, 68, 247.) Claimant had an eleventh grade, or limited education, and was able to communicate in English. (Tr. 25, 76, 82, 247.) In the past, she worked as a housekeeper and cook. (Tr. at 25, 77-79, 248-49, 264.)

<u>The Medical Record</u>

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

*Dr. Clarkson*:

Claimant treated with Dr. Mark Clarkson, D.O., from January 14, 2008, through August 27, 2008. (Tr. at 184-92.) On her initial exam on January 14, 2008, Claimant reported that she was a married homemaker with two children. (Tr. at 187.) She complained of insomnia for which she was prescribed Hydroxyzine 25mg, though it was noted that her excessive caffeine intake may have contributed to her insomnia. (Tr. at 188.) The Hydroxyzine was discontinued on February 14, 2008, and she was started on Trazodone 50mg, and was advised to decrease her caffeine intake. (Tr. at 186.) Claimant continued to complain of insomnia on April 14, 2008, and reported a great deal of stress at home. (Tr. at 185.) Her medication again was changed and Dr. Clarkson encouraged her to decrease caffeine intake and improve her overall lifestyle including good nutrition, adequate hydration and rest, and regular exercise. (<u>Id.</u>) On August 27, 2008, Claimant told Dr. Clarkson that she was filing for disability based on her decreased respiratory function. (Tr. at 184.) Dr. Clarkson

7

noted on each examination that Claimant was alert and oriented. (Tr. at 184-88.)

*Dr. Craft*:

Dr. Gary Craft, M.D., conducted a consultative examination of Claimant on May 28, 2008. (Tr. at 172-83.) Claimant reported a history of COPD and scars on each lung, hypertension, generalized stabbing back pain, and anxiety associated with marked insomnia for which she was treated with Ambien at bedtime. (Tr. at 172-73.) On exam, Claimant was alert and cooperative, free of any acute distress, was very well oriented, and she related well with others. (Tr. at 173-74.) She had a normal affect, memory, thought content, and general fund of knowledge. (Tr. at 174.) Dr. Craft opined that the long term prognosis for her mental condition was good. (Tr. at 175.)

*Dr. Patel*:

Claimant presented to Dr. Vishnu Patel, M.D., as a new patient, on November 5, 2008, for complaints of a lung collapse and for a pulmonary function test. (Tr. at 193-96.) Dr. Patel noted that Claimant appeared very anxious and nervous though her mental status grossly was intact with no focal findings on examination. (Tr. at 195.) He diagnosed anxiety, among other conditions. (Tr. at 196.) Claimant continued to treat with Dr. Patel from February 5, 2009, through October 1, 2009, which consisted of five exams. (Tr. at 213-25.) On all five visits, Claimant made no specific mental-related complaint and Dr. Patel noted that she was "awake alert oriented times three" on each visit without any specific mental status finding. (Id.)

*Ms. Jennings*:

On April 29, 2009, Elizabeth Jennings, M.A., a licensed psychologist, conducted a psychological evaluation of Claimant at the request of the West Virginia Department of Health and

8

Human Resources.[3] (Tr. at 226-30.) Claimant reported poor sleep consisting of two hours of sleep per night, poor appetite with unexplained weight loss, frequent crying spells, varied energy levels, loss of interest in activities, and panic attacks. (Tr. at 226.)

On mental status exam, Ms. Jennings observed good eye contact, no distractibility or impairment in speech; coherent and articulate speech, full orientation, a dysphoric mood and mildly labile affect, and a tearful disposition when Claimant discussed her health problems. (Tr. at 228.) Claimant's insight, judgment, social functioning, and remote memory were mildly deficient. (Id.) Ms. Jennings opined that Claimant's recent memory was moderately limited and her immediate memory and concentration were within normal limits. (Id.) The Beck Depression Inventory revealed a severe range of symptoms and the Beck Anxiety Inventory revealed a moderate range of symptoms. (Tr. at 228-29.) Ms. Jennings diagnosed major depressive disorder, recurrent, moderate; panic disorder with agoraphobia; pain disorder associated with both psychological factors and a general medical condition by history; and assessed a GAF of 55-60.[4] (Tr. at 229.) She opined that her prognosis was guarded with available medical and mental health treatment. (Id.) Ms. Jennings believed that Claimant would benefit from psychiatric evaluation for stabilization of her symptoms of depression

---

[3] Ms. Jennings had conducted a prior psychological evaluation of Claimant on August 14, 2008, which included a Pain Patient Profile (P3), Beck Anxiety Inventory, and Beck Depression Inventory. (Tr. at 227.) The P3 was considered valid and revealed severe somatic distress, anxiety, and associated symptoms of moderate depression. (*Id.*) Psychiatric intervention was strongly recommended. Both the Beck Inventories suggested severe range of symptoms. (*Id.*) Ms. Jennings diagnosed major depressive disorder, recurrent, moderate; panic disorder with agoraphobia; and pain disorder, associated with both psychological factors and a general medical condition. (*Id.*) The records from Ms. Jennings's August 14, 2008, evaluation are not a part of the administrative record.

[4] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

and anxiety through referral for individual therapy to assist in stress management and pain management. (Id.) She opined that Claimant's "psychiatric symptoms are serious in nature and are currently not stabilized. Additional stress is likely to result in decompensation due to the combination of psychical and mental health issues. In her present condition, it is not felt that she would be able to hold gainful employment." (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to consider adequately her psychological impairments. (Document No. 12 at 4-7.) Claimant initially asserts that the ALJ erred in failing to find that she has a psychological condition that constitutes a severe impairment. (Tr. at 4-5.) She explains that the ALJ at no point in her decision states why Claimant has a non-severe psychological impairment, and references only Dr. Craft's positive mental status findings. (Id) Claimant further asserts that the ALJ erred in giving only slight weight to Ms. Jennings's opinions because they were rendered before she began treating with Dr. Reynolds. (Id. at 5.) Claimant notes that Dr. Craft's opinion, too, was rendered before she began treating with Dr. Reynolds. (Id.) Claimant asserts that the ALJ's "disregard of Ms. Jenning[s]'s diagnoses and opinions is astounding in light of the fact that Dr. Jose Reynolds['s] records are not contained in the record, and were not before the ALJ, for consideration. Therefore, the ALJ had no idea whatsoever as to the particular treatments provided by Dr. Jose Reynolds, or their efficacy." (Id.) The ALJ only knew what medications Dr. Reynolds prescribed per Claimant's testimony at the administrative hearing. (Id. at 6.) According to Claimant's testimony, Dr. Reynolds's treatment has not been effective and her symptoms have worsened contrary to the ALJ's assumption. (Id. at 7.)

In response, the Commissioner asserts that the ALJ properly followed the special technique

10

and determined that Claimant had mild limitations in her ability to perform activities of daily living, social functioning, concentration, persistence, and pace, and had no episodes of decompensation of extended duration. (Document No. 14 at 9-10.) The ALJ properly concluded that Claimant's alleged mental impairments caused no more than minimal limitations in her ability to perform basic mental work activities, and therefore, were not severe. (Id. at 10.) The Commissioner further asserts that the ALJ's decision was supported by the medical evidence, including the medical records from Drs. Clarkson, Patel, and Craft. (Id. at 10-11.) The Commissioner asserts that little weight was given to Ms. Jennings's opinion because her mental status findings were unremarkable and did not support her extreme opinion. (Id. at 11.) Her opinion was inconsistent with the unremarkable clinical findings of Drs. Clarkson, Patel and Craft; Claimant's failure to seek specialized mental health treatment during the relevant period; and Claimant's array of self-reported activities and abilities. (Id.) Ms. Jennings's opinion, therefore, was inconsistent with the record as a whole. (Id.) The Commissioner finally asserts that the jobs identified by the VE all were unskilled in nature. (Id.) Consequently, the Commissioner asserts that even if Claimant's mental impairments resulted in an ability to perform only unskilled work, the jobs identified by the VE would have satisfied this limitation. (Id. at 12.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to develop the record. (Document No. 12 at 7-8.) Claimant states that at the close of the administrative hearing, the ALJ, on her own initiative, advised that she was going to refer Claimant for consultative physical and psychological exams and would leave the record open for that purpose. (Id. at 7.) After the consultation had been scheduled but before it had commenced, the ALJ issued her decision denying "the existence of any impairment relating to her psychological condition." (Id.) Claimant asserts that the ALJ failed to justify her actions and rendered her decision without the consultative psychological examination having been conducted and without

11

having received any records from her treating mental health provider, Dr. Reynolds. (Id.) Claimant asserts that she submitted additional records from Dr. Nasreen Dar dated February 14, 2010, through March 24, 2010, and from Dr. Philip B. Robertson dated October 13, 2010, through April 8, 2011, to the Appeals Council, which were not considered because they post-dated the ALJ's decision.[5]

In response, the Commissioner asserts that contrary to Claimant's argument, there was no need for the ALJ to develop further the record. (Document No. 14 at 12-15.) The Commissioner asserts that "the fact that the ALJ changed her mind about the necessity of the consultative examinations in not fatal to the ALJ's decision." (Id. at 12.) The Commissioner asserts that decision lies within the ALJ's discretion, and the ALJ concluded after the hearing that the record contained sufficient evidence to render a decision. (Id.) The record contained consultative physical and psychological exam reports from Dr. Craft and Ms. Jennings. (Id. at 12-13.) Regarding Dr. Reynolds's treatment notes, the Commissioner asserts that the burden was with Claimant to produce the records and not with the ALJ. (Id. at 13.) Finally, the Commissioner asserts that pursuant to the Regulations, the Appeals Council properly did not consider the additional records submitted by Claimant as the records post-dated the ALJ's decision and did not relate to the period on or before the ALJ's decision. (Id.) The records properly were returned to the Claimant. (Id.) The Appeals Council advised Claimant to file a new disability application if she wanted the agency to consider whether she became disabled after December 30, 2009. (Id. at 14.) Accordingly, the Commissioner asserts that Claimant's arguments are without merit. (Id.)

---

[5] The Court notes that the records submitted to the Appeals Council are not part of the administrative record submitted to the Court.

Analysis.

1. Severe Impairments.

Claimant first alleges that the ALJ erred in failing to find that she suffered a severe mental impairment. (Document No. 12 at 4-7.) To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2009). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). Respecting mental impairments, as stated above, the four broad functional areas of activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation each of extended duration, must be rated to determine the severity of the impairment.

The record contains a single psychological evaluation, which indicates that Claimant's social functioning was mildly deficient and her concentration was within normal limits. (Tr. at 228.) Regarding activities of daily living, Claimant testified that she cares for her personal needs, cleans the house, drives, shops twice a month, pays the bills, and cares for her grandson with the help of her

husband. (Tr. at 256-57, 259.) On a form Function Report - Adult, dated October 3, 2008, Claimant reported that on a daily basis, and with several breaks throughout the day, she made the bed; cleaned the bathroom; vacuumed the hallway; dusted and vacuumed the large living room, kitchen, and sitting room; cleaned up after dinner; showered; and went to bed. (Tr. at 104, 111.) Regarding concentration, persistence, or pace, Claimant further reported that she was able to pay bills, count change, handle a savings account, and use a checkbook or money order. (Tr. at 107.) She indicated that her ability to handle money had not changed since her conditions began. (Tr. at 108.) She reported that she could pay attention for as long as was needed, followed instructions well, got along well with authority figures, and handled stress well. (Tr. at 108-10.) She indicated that she did not handle changes in routine well in the sense that she was not used to having others do things for her. (Tr. at 110.)

      The ALJ concluded that Claimant was limited mildly in the areas of activities of daily living, social functioning, concentration, persistence, or pace, and had no episodes of decompensation. (Tr. at 20-21.) The undersigned finds that the ALJ's findings of mild limitations in three of the four functional areas and a finding of no limitation in the fourth area is supported by the substantial evidence of record. Despite Ms. Jennings's diagnoses, the evidence did not establish any limitations resulting from Claimant's mental impairments. Furthermore, the evidence did not support Ms. Jennings's opinion that Claimant was unable to work. The only record Ms. Jennings reviewed was her prior psychological evaluation of August 14, 2008, and her mental status exam revealed only mild limitations, with the exception of moderate deficiencies in her recent memory. (Tr. at 228.) Accordingly, the Court finds that the ALJ's step two finding regarding Claimant's mental impairments and the weight she accorded the opinions of Ms. Jennings is supported by substantial evidence.

14

2. <u>Duty to Develop the Record</u>.

Claimant also alleges that the ALJ erred in failing to develop the record regarding her mental impairments and resulting limitations. (Document No. 12 at 7-9.) Specifically, Claimant asserts that the ALJ should not have rendered her decision without the benefit of the psychological evaluation as she proposed at the hearing and in the absence of the records from her treating mental health provider, Dr. Reynolds. (<u>Id</u>.) In <u>Cook v. Heckler</u>, 783 F.2d 1168, 1173 (4th Cir. 1986), the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." <u>Id.</u> The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. <u>Id.</u>

It is nevertheless Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a) (2009) (stating that "in general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).") Thus, the claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment. <u>Id.</u> §§ 404.1512(c), 416.912(c). The Regulations provide that: "You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." §§ 404.1512 (c); 416.912(c)(2009). In <u>Bowen v. Yuckert</u>, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Supreme Court noted:

The severity regulation does not change the settled allocation of burdens of proof in

> disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. at 146, n. 5; 107 S.Ct. at 2294, n. 5 (1987). Thus, although the ALJ has a duty to develop the record fully and fairly, he is not required to act as the claimant's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a prima facie entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, Claimant "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

Claimant was represented by counsel when she appeared before the ALJ at the administrative hearing. Claimant testified that she had seen Dr. Reynolds for approximately six months at the Department of Health Center for mental health issues. (Tr. at 254.) Counsel never indicated that he was unable to provide the medical records from Dr. Reynolds. As stated above, Claimant bears the burden to prove her disability and it was her responsibility to provide the records to the ALJ. Though the ALJ could have asked counsel to provide such records, the ultimate burden remained with Claimant. Regarding the proposed psychological evaluation, it is plausible, and certainly within the ALJ's discretion, to have decided later that the evidence of record was sufficient to render a decision. As the Commissioner notes, the record contained the single psychological evaluation by Ms. Jennings, which was the very type of examination proposed by the ALJ. With the exception of the evaluations by Ms. Jennings, the record contains very little substantively as to Claimant's mental

impairments with the exception of subjective reports of family stressors. Thus, the Court finds no error in the ALJ's error to follow through with her proposal for another evaluation when the record already contained such an evaluation.

Claimant also alleges that the Appeals Council erred when it determined that the evidence she submitted on appeal was not material to her claim. (Document No. 12 at 8-9.) The Regulations provide that the Appeals Council must consider additional evidence "only where it relates to the period on or before the date of the administrative law judge decision." 20 C.F.R. §§ 404.970, 416.970 (2009); see also, Wilkins v. Secretary, Dep't of Health & Human Svcs, 953 F.2d 93, 95-96 (4th Cir. 1991). If a claimant submits evidence which does not relate to the period on or before the date of the ALJ decision, the Appeals Council will return the additional evidence and advise the claimant of the right to file a new application for benefits. See 20 C.F.R. §§ 404.976(b)(1), 416.976(b)(1) (2009).

Claimant submitted medical records from Dr. Dar dated February 24, 2010, through March 24, 2010; from Dr. Robertson dated October 13, 2010, through April 8, 2011; from Dr. Patel dated December 3, 2010, through April 25, 2011; and from the Mercer County Health Department from November 12, 2010 through May 8, 2011. (Tr. at 6.) The Appeals Council determined that the additional medical records constituted "new information...about a later time." (Id.) The Appeals Council concluded therefore, that the additional evidence "did not affect the decision about whether [Claimant was] disabled beginning on or before December 30, 2009." (Id.) Claimant was advised of his right to file a new claim and the evidence was returned to him. (Id.) Without having the benefit of viewing the documents, the Court finds that based solely on the dates of the medical records as stated in the Notice of Appeals Council Action that the Appeals Council acted according to the Regulations in finding that the additional evidence did not relate to the period on or before the date of the ALJ's decision. Accordingly, on the record before the Court, the undersigned finds that

17

Claimant's argument is without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Document No. 11.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 14.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 29, 2013.

R. Clarke VanDervort
United States Magistrate Judge